I'm Wade Shurnick. I'm on behalf of the plaintiffs. I believe that Asuta Medical Center... Where are you led to? Oh, it's my humor. I guess I'm pretty nervous here, so I'm just trying to... You want a glass of water? Probably something stronger would be better at the moment, but I'm okay, thank you. Homeland as well? No, I represent the plaintiffs here. You represent the plaintiffs. Yes, I do. I believe that Asuta Medical Center and Nataraj Chandra Sekhar deserve... When we shine our headlights in your eyes as you're crossing the road, then you can start to worry. Okay, thank you. I believe that plaintiffs deserved a better fate regarding the review of the evidence that was submitted. Plaintiffs insist that the job duties were those of an MIS manager. An MIS manager involves comprehensive strategic business plan development as supported by the Occupational Outlook Handbook. And three different times in this process, the plaintiffs attempted to convince the administrative agency that that's what the job encompassed. Now, because of the nature of the employer, that being a medical center, the ERP system being developed had to encompass a wide range of specialties. That would include marketing components, that would include personnel aspects, financial-related matters, maintenance of the  And so, the plaintiffs, after a series of no-go decisions and adopted by the district court judge, concluded that really what the alien Nataraj Chandra Sekhar was involved was that he himself would be engaged in strategic marketing, planning, and hiring of staff. Now, in its November 2003 letter, the employer indicated that that's not what the job encompassed. Now, because of the nature of the employer, there would be expansion viabilities and marketing components that were all chief characteristics of this overall ERP system. And that's what it was trying to make clear. But the agency, I believe, confused the matter and seems to have found that the alien would be involved in actual hiring. That's not what the job  So, what standard of review would you apply to CIS's decision? It would be Chevron. There would be deference, but there has to... You have to convince us that the decision was pretty tough standard of review, arbitrary and capricious violation of the law. Why is this arbitrary and Because it's, I believe, Your Honor, a mischaracterization of the facts. I think it's not a mixed record, a mixed job. I think it's an MIS manager that because of the nature of the company is going to require the computerization of a system that's going to take into account a wide range of components to the business. You know, not to use the street language, that's kind of called tough luck. The purpose of this is to protect jobs for American workers, basically. And you have to have some kind of a specialty. And if your position doesn't have a specialty and involves all kinds of other things, that's the company's problem. I would contend that the company, that the job is that of an MIS manager. And that is the core dispute. I mean, in support... What was your client's specialty? His degree was, he had an equivalency of a degree in MIS management. His actual degree was in accounting, but his combined experience in accounting and in computer systems... But the degree wasn't. You're characterizing it as that. Equivalency. But it wasn't. It was in accounting. But accounting encompasses a significant part of the job. There is a wide range of accounting and budgetary components within the MIS system. He had a wide range of experience. He had previously been granted an H for the same job. The problem is I see it as you want your company to be able to define specialty occupation. That way it structures the job to include things that otherwise would not be part of a specialty occupation. It wasn't just the company that concluded that. There was an expert letter that was submitted from a Ph.D. professor from the University of Oklahoma that said... I'm pretty jaded on experts. I've never seen a case yet that can't buy experts on both sides. But nevertheless, it is evidence that has to be considered and wasn't considered. This expert went on and he considered... Wasn't considered? I believe it wasn't, because he... Well, the problem that I have was that the expert went on... He reviewed the decision from the AAO and stated that he disagreed with it in that to be an MIS manager, you have to be familiar with all components to the business. And the AAO rejected his analysis, stating that he hadn't properly considered the nature of the job. That's part of the problem. A disagreement doesn't mean something is arbitrary and capricious. I understand what you're saying, but I believe that somebody with his background would be in an excellent position to assess whether the position qualifies that of an MIS manager or not. I'm just requesting that the agency review the documentation that was submitted, and then I believe it can make a proper legal analysis of the matter. Well, the way the government defines MIS manager, they're really talking about someone who's going to be working for a large company. I don't believe the size of it. We have a case, Young China Daily v. Chapel, up in the Northern District many years ago, that the size of the business is irrelevant. But in any event, in the record, it indicates that the MIS manager would be supervising other computer staff. It states the front office staff would be trained on the system. I believe the back office staff would be working with certain accounting elements to the computer system. So he would be overseeing computer staff. What the OOH, the handbook in this area, talks about is constructing a business plan, and that's what he's going to be doing. Is it not true that the duties to be performed constituted a mixture of different tasks, many not consistent with the specialty occupation of information systems manager? I don't agree with that. I mean, I know that that's what the AAO said, but I think this is an MIS manager position that has to look at all aspects to the business and put it into a computerized format for the business so that it can go again. You want your business to be able to define the position based on what you ask of this person to do. If that's the case, any business could come in and say, well, this is a specialty occupation, even though we have them doing all these other things. It's not pure, but we get to define it, because that's the way our business works. I believe the business is in the best position to know what the requirements are. Why do we have a review at all? Just let the business say it's a specialty occupation, check it off, and the guy gets to work here. Well, obviously, sure, within a reasonable standard. It has to fit the standard. And that's the point, and the director here says this wasn't reasonable. There's too many other duties here that don't fit the specialty occupation. Well, tell us how he fits the standard. Because the job duties, when you consider them under the totality of the circumstances, they're for the usage or for the creation of this ERP, enterprise resource planning system that is supposed to take into consideration marketing, accounting, personnel. I mean, in order for him to create the software system, he has to be familiar with these aspects of the business. But the job duties themselves are computer related. Is that the heart of what an MIS manager is expected to do? Business plan development, yes. And in order to be successful at that job for this company, the alien has to be familiar with these various components to the job, so that he can create the system. He can develop a system that's going to encompass all of the company's operations. Especially because the business is seeking to expand, both in the nature of its work, along with additional satellite offices and personnel. But again, I have to sum up, I believe that there was a mischaracterization of the evidence, and I will request that this be remanded for further review. Good morning. May it please the Court, I am Assistant U.S. Attorney Jonathan Klink, representing the Department of Homeland Security and Citizenship and Immigration Services. In this record review action, the record reveals there was no abuse of discretion. Asuta Medical Center is a medical business with 10 employees and an annual income of less than $10,000. Asuta claimed that its management information systems manager qualified as a specialty occupation. Can I ask you a question? How is it that the owner of this cup, that this gentleman was originally granted an HIV visa? We don't know. We can only infer that the director at that time approved the first and found it to be a specialty occupation. Well, when they approved it, was it all there on the table? I mean, was there any fraud in procurement of that visa? I don't think there's ever been a question of fraud in the record on the first, but whether there was... They had all the information. All the information was before the government, and the authorities granted this gentleman a original HIV visa, right? That's correct, Your Honor. It must have met everything, presumably at that time. We don't know. That initial approval wasn't in the record. We just know, and the record reveals, that upon the renewal, upon close scrutiny, the MIS manager... There wasn't close scrutiny to begin with? We don't know what was done, Your Honor. Well, we have to presume the government does its job, don't we? I don't know, Your Honor, because that wasn't before me, and I can't speak to that, to that initial grant. Well, it seems to me if they granted it initially, and he goes on working, and he's doing what he said he was going to do, or what the company said he was going to do, when they first granted the visa, then I don't know. I don't understand why, suddenly, when it comes up again, they say, well, you know, you don't meet the qualifications of an MIS manager, because he's doing what he said he was going to do, and they gave him the visa. He was doing it. Well, each application is a separate process, and we don't know what happened in the initial, in the initial application that was granted, but we do know... Well, aren't you supposed to know that? It's not necessary in this instance, Your Honor, because each application is separate, and also, unlike the first application, in this present application, the AAO, the Administrative Appeals Office, rendered not one but two decisions backing up the decision of the director. Mr. Hynek, I want to pursue a different line of inquiry. As Judge Brageson observed in the talking to counsel for the applicant, it seems like little companies are treated differently from big companies, that if this man had been doing much of the same thing for a big company, he'd be a specialist, but he works for a little company, ten employees. So he, to some extent, he's a jack-of-all-trades, but isn't there something arbitrary about a regulation that discriminates against small companies? Does the government really want to do that, to discriminate against small companies? No, Your Honor, because there is no discrimination against small companies. As pointed out in the Occupational Outlook Handbook, we're seeing that some two out of five of these information system managers will be employed by, it doesn't specify large or small corporations, but those companies providing contract computer services, not grocery stores, medical services, or other businesses. And any business offering contract computer services would not be discriminated against. So I don't think there's any discrimination against small businesses present in the statute of the regulations. But it seems to me this little company needs this man, they say they do, and I haven't seen any evidence that they don't need him for his computer specialty. But they say if you're working for us, well, you've got to do a couple of other things. But that's precisely what defeats the specialized occupation. For example, Asuta said in their response to request for evidence that the position would require 44% of the time installing and configuring software systems, 40% in maintenance, and an additional 6% in implementing and monitoring computer security systems. This isn't what the Occupational Outlook Handbook refers to, which is someone supervising computer specialists themselves. And this person isn't a computer specialist. But doesn't that automatically discriminate in favor of big companies? You've got to have a team of people you're supervising. Not in the sense that it discriminates against the type of specialty required, but naturally there's going to vary between large and small companies. For example, whether a physician would be required or whether a CPA would be required. Not all small companies require that to have on staff. That's why they contract them. Do you have any doubt that this company needs this man for a computer specialty, among other things? The focus isn't so much whether they need the beneficiary, but what the job itself requires. And that's what the AAO found, was not a specialized occupation. They may require or be happy with the beneficiary's services, but the task before the director and the AAO was whether that specific... Wasn't he doing this computer specialty work? He was doing some computer work. He was doing bookkeeping. Computer specialty work. From what we understand, the AAO found that his computer-related work only required certificates, did not require a bachelor's or any special degree or equivalent performance. Well, the way I understand it, this small company, 10 employees, they're getting bigger. He had the talent, and I thought that was the talent of a computer specialty. I don't know too much about computers, and I don't want to know too much about computers. I've got brilliant law clerks and grandchildren that know a lot about computers. And I thought that what he was doing was tying all of these other activities together into one unified operation. And they were setting up billings for people, weren't they? Is that what they were doing, billings? The story presented to the AAO was that the beneficiary was doing functional tasks in order to become familiar with the business, but the AAO discounted that explanation on the grounds that he'd been working with them for four years, and it was unbelievable to accept the explanation that the person, the beneficiary, had been doing these functional tasks, bookkeeping, employee management, business management, in order to become familiar to do computer tasks. Well, you have to know what everybody's doing in order to bring it all together, don't you? He would, but not to do it for four years. That indicated that he was doing functional tasks and not doing what an information... Well, isn't it a dynamic environment? It's always changing. There are always new computers. There is change in the computer systems, but as anybody who's gone into a medical office knows, all the workers in a medical office are computerized. But there's no showing in the record that what he was doing rose to the level to justify a specialized occupation visa. To bring it all together. Is that what we're talking about? See that the system is working. His functional duties involved included bookkeeping, business management, personnel management. If the guy that owned the company said, okay, I don't want you to do anything else except this computer specialty operation, then he'd be okay, huh? If all the job description required was what was defined by the Occupational Outlook Handbook as an information system management, that probably would have met the requirement. And if we then brought in a part-time somebody who'd come in two hours a week to do some bookkeeping and someone would come in a few hours a week to do something else, something else, something else, it would be okay. Presumably so. That would be certainly vastly different facts from those present in this record. Now, I understand the handbook says that MIS managers are frequently involved in the planning and expansion activities of their companies. Do you disagree with the handbook? Your Honor, I don't disagree with that portion of the handbook. Well, that means they're going to be doing other things than running computer systems. But it follows that someone in charge of the computer system would naturally have to be aware of the expansion of the company in order to provide adequate... How do you get there except you know how the thing is running and really I would think on a week-to-week basis seeing what could you do to improve it? What we would submit to the court is the difference between that and what the facts in this record are is overseeing expansion is different from the bookkeeping, the management, and the employee management tasks that any... No, maybe it is different, but the idea is planning and expansion are not exactly computer work. It goes beyond the computer work to use the computer knowledge to affect these other tasks, and the handbook recognizes that. That's correct, Your Honor, because that's a further elaboration of supervising computer-related employees that we don't have here. When you get back to this position, you're a company with a lot of computer employees, you're okay. If not, you're a little company, you're out of luck. That's not what the regulation requires, and going back... That's effectively the way it's applied. Not every company can meet the requirements of a specialty visa application or requirement. Boy, they met it initially. They met it initially when he came here. He got that H-1B visa. The visa was granted, Your Honor. He left the country where he lived. He brought his wife, his kids here. He spent years over here. You can't tell us why he qualified the first time and not this time. That kind of bothers me. The denial was on October 13, 2003. What's he been doing since then? Was there a stay involved in this? Is he continuing to work? There's no official stay in place, Your Honor. We understand that he's still employed at Asuda Medical, but we don't know that for a fact. He has not been placed in removal. So even though you don't have... How does this work? You deny the visa, but you allow him to continue working in that position for four years? What I know from the record, Your Honor, is that he has not been placed in removal proceedings. So what does that mean? I mean, I know what it means, but so how come? Presumably there is other agency priorities that have gone before this, but I can't answer the court's question directly. If the court would like, I'd be happy to supply a letter brief. You mean he just never got around to them? That may be, Your Honor. I can't answer the question factually. Well, is he working legally or illegally if he's continuing in this position? Again, I don't know the answer to that question specifically, but since the visa has expired, presumably it's illegal. And I see my time is up. Unless the court has any further questions, we would submit on the brief. Anything further? I have a couple of questions. We've got a few questions for you. Thank you. What has been your client's status since October 13, 2003? I think that he's been, I don't have a definite answer either, except I would say probably, truthfully, he's probably, it all depends on what the Ninth Circuit rules. Did he get a stay against any of this, including the district court's opinion? A stay of removal? Is that what you're asking? He didn't, but if he were to be placed in removal proceedings, and that's a discretionary call by the administrative agency, if he were to, then certainly a stay of removal would be requested under the pending resolution of this issue. So the visa's denied, he just keeps working for four years? If the visa's denied, I think he's going home. He has no basis for being here. It was denied on October 13, it was denied on appeal, it was denied on reconsideration, it was denied in the district court a couple years ago. He just keeps working. I don't have an answer to that, but he has exercised his right to appeal here in the Ninth Circuit, which he's entitled to do. Thank you. Well, the next matter, thank you, this is submitted. And now we come to number four on the calendar.
judges: Pregerson, Noonan, Trott